# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-0958-SCT

*DEBORAH F. WALLACE*

*v.*

*WALTER M. THORNTON, SR., D/B/A THORNTON BONDING COMPANY AND LEVON FREE*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/15/92 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHESTER D. NICHOLSON |
| | GAIL D. NICHOLSON |
| ATTORNEY FOR APPELLEE: | GEORGE S. SHADDOCK |
| NATURE OF THE CASE: | CIVIL - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 3/7/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/28/96 |

### BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.

### McRAE, JUSTICE, FOR THE COURT:

¶1. This case arises from a July 15, 1992 jury verdict of the Jackson County Circuit Court awarding Deborah Wallace $1,000.00 in damages from Walter M. Thornton, Sr.,[1] d/b/a Thornton Bonding Company, and his employee, Lavon Free. Wallace contends that the award is inadequate to compensate her for the injuries she sustained as the result of an October 1, 1990 incident wherein she was mistakenly apprehended in her Gautier home by two bail bondsmen and taken to Thornton Bonding Agency in Pascagoula against her will. Finding that the circuit court erred in granting Thornton's motion for a directed verdict on the charge of false imprisonment and in denying Wallace's requested jury instruction on punitive damages, we reverse and remand for a new trial consistent with this opinion.

### I.

¶2. Lavon Free and Doug Coon were employed as bail bondsmen by Walter Thornton, d/b/a Thornton

Bonding Company. On October 1, 1990, they were looking for Deborah Renee Tabuyo, who had jumped bond on charges from the Pascagoula City Court. Both were acquainted with the 5'7''', 230 pound Tabuyo and carried her photograph with them. Checking a lead from some contacts as to her whereabouts, the two went to the Belle Ville Apartments in nearby Gautier.

¶3. Free's contacts pointed them to an apartment, where, without confirming the identity of its occupant, they began knocking on the door. There was no response. Free went over to the apartment office, where he told Yvonne Fuller, the manager, that he wanted to get into Tabuyo's apartment. After she refused to give him the key, Free threatened to kick down the apartment door.

¶4. Coon testified that Free told him that he had telephoned Thornton after Fuller refused to let him in the apartment. Free then told him "to kick the G.D. door in--that Walter had told him to kick the door in and get her."

¶5. Coon kicked in the door. Once inside, he stated that he went upstairs where he had heard crying. He opened a bedroom door to find the 5'3''', 120 pound Deborah Wallace in a T-shirt and underpants with her two toddlers behind her. Coon testified that he then realized they had apprehended the wrong woman and informed Free of their mistake.

¶6. Wallace testified that she had been napping after taking some cold medicine that left her groggy and sedated. She stated that Free was the first to come up the stairs; in her sedated state, she thought that he had a gun. Neither man identified himself nor looked at the identification she presented after she told them she was not Deborah Tabuyo. After Wallace was given a chance to dress and clean up her children, she testified that they told her, "You're coming with us, you have no choice. You are coming with us." She and the children got into the car. Coon testified that she was "pretty well upset" and indicated that she did not want to go with them.

¶7. Free contends that no force was involved in getting Wallace to leave with them. To the contrary, he told her that she would have to come with them to Thornton's office in Pascagoula to see about having her door repaired:

> I said, "Ma'am, we was looking for a lady named Deborah Tabuyo." And I looked around at Doug and I said, "You done kicked the wrong door in, Buddy," just like that. Then she said, "What y'all going to do about my door?" I said, "Ma'am, I ain't got no money." I said, "There ain't but one man that can solve your problem getting your door fixed. That's Mr. Thornton. If you want to, you can ride down here with us or you can follow me in your car." She said, "I don't have a car and can't drive, but I want my door fixed." I said, "Well, we'll give you a ride down there and get your door fixed. You got to talk to him."

¶8. At the office, Coon testified that he and Free told Thornton what had happened and "[h]e said we shouldn't have put her in the car and brought her down here." He further stated as follows:

Q. All right. What else did Thornton say at that time?

A. Uh--he said to keep the stories, what Free told him. He said to keep to that story.

Q. What story was that?

A. That she wanted to come to the office and that we didn't make her come to the office, that she wanted to come to the office.

Q. Is that true? Did she want to come to the office?

A. No, sir. She didn't want to come.

¶9. Wallace testified that they spent about a half hour at Thornton's office, where no one seemed to know what to do about her situation. To add to the confusion, Deborah Tabuyo arrived at the same time as Wallace, Free and Coon. When they left, Wallace indicated that Coon admitted to her that they had made a mistake, offered to take her to the store on the way home and told her to call Thornton Bonding if she had any problems.

¶10. As a result of the incident, Wallace claimed that she felt "violated," and "like I wasn't safe; that anyone could come in and do anything to me." She lost weight and suffered from nightmares. Distressed, she sought counseling and was diagnosed as suffering from post-traumatic stress disorder.

¶11. Wallace filed a complaint against Thornton and his agents, Lavon Free and Doug Coon,[2] on November 6, 1990. She raised allegations of false imprisonment, assault, invasion of privacy and negligence in connection with the October incident, seeking $250,000.00 in compensatory damages and $250,000.00 in punitive damages.

¶12. A jury trial was held on July 13 and 14, 1992. The circuit court granted Thornton's motion for a directed verdict on the issue of false imprisonment. The jury then returned a verdict in favor of Wallace, awarding her $1,000.00 in compensatory damages. Wallace's July 21, 1992 motion for an additur, or in the alternative, for a new trial, was overruled.

## II.

¶13. Wallace first asserts that the circuit court erred in granting Thornton's motion for a directed verdict on the charge of false imprisonment when a jury question existed as to whether she went willingly with Coon and Free to Thornton's office in Pascagoula or whether she was taken there against her will.

¶14. When determining the propriety of a motion for a directed verdict, this Court, like the circuit court, is required to consider the evidence in a light most favorable to the plaintiff, giving her the benefit of every favorable inference which reasonably may be drawn from the evidence. *Lewis v. Griffith,* 664 So.2d 177, 187 (Miss.1995); *Wall v. Swilley,* 562 So.2d 1252, 1256 (Miss.1990). In *Regency Nissan, Inc. v. Jenkins,* No. 92-CA-00052-SCT, --- So.2d ---- [1995 WL 598823] (Miss. October 12, 1995), we articulated the proper standard when there is conflicting testimony:

> **When contradictory testimony exists, this Court will "defer to the jury, which determines the weight and worth of testimony and credibility of the witness at trial."** *Odom v. Roberts,* 606 So.2d 114, 118 (Miss.1992). This Court "will not reverse a jury verdict unless it is against the overwhelming weight of evidence and credible testimony." *Gifford v. Four-County Elec. Power Ass'n,* 615 So.2d 1166, 1171 (Miss.1992). **Regency, who moved for a directed verdict, was required to meet this standard with the evidence and inferences drawn therefrom viewed in a light most favorable to Jenkins.** *Eaton v. Porter,* 645 So.2d 1323, 1325-26 (Miss.1994).

Factual disputes arise when "one party swears to one version of the matter in issue and another says the opposite." *Clark v. Moore Memorial United Methodist Church,* 538 So.2d 760, 762 (Miss.1989). A directed verdict is inappropriate when questions of fact exist. *Illinois Central R.R. v. White,* 610 So.2d 308, 314 (Miss.1992).

*Regency,* --- So.2d at ---- (emphasis added).

¶15. Our standard of review requires that the circuit court, like this Court, look at the evidence in a light most favorable to Deborah Wallace and to give her the benefit of every doubt. In granting Thornton's motion for a directed verdict on the issue of false imprisonment, however, the circuit court stated:

> On the issue of false imprisonment, I've gone over the testimony of the notes that I have and I know that plaintiff's counsel takes issue with my position that there has to be some sort of intentional act, but going over the testimony, I did not hear sufficient testimony to make me believe that this is a case of false imprisonment. The testimony, as the Court recalls, is that the plaintiff did not want to go with them but that she did. No one physically touched her. No one forced her into the car. Nobody told her she had to go with them. Mr. Coon testified that, as he recalled it, the only reason Mr. Free indicated to her that she had to go with him was to get the money to get her door fixed.

> * * * * * *

> My understanding of the law of false imprisonment is that, number one, the defendant or the person doing the imprisoning must have the intent to arrest or imprison the person. I don't think Mr. Free or, the testimony that I heard, Mr. Free or Mr. Coon intended to arrest this woman. What they wanted was to get her down there and get her paid for her door.

The circuit court's comments suggest to us that it was Coon's testimony and not Wallace's that was viewed in the most favorable light and given the benefit of every doubt.

¶16. The tort of false imprisonment has only two elements: (1) detention of the plaintiff and (2) that such detention was unlawful. *Lee v. Alexander,* 607 So.2d 30, 35 (Miss.1992); *Page v. Wiggins,* 595 So.2d 1291, 1294 (Miss.1992); *Thornhill v. Wilson,* 504 So.2d 1205, 1208 (Miss.1987). In *Thornhill,* we noted that the second element turns on whether, looking at the totality of the circumstances, the actions of the defendants were "objectively reasonable in their nature, purpose, extent and duration." *Id.* at 1208. It is the reasonableness of the defendants' actions, not their intent, that matters. The record indicates that Wallace had been resting, "drugged" on cold medication, when Free and Coon kicked down the door to her apartment. Although she identified herself and the two bondsmen realized that she was not the bail jumper they sought, it does not appear that any apologies or other efforts were made to ease the situation. Even accepting Coon's and Free's version of the incident that they took her to Pascagoula to get money for the door, the reasonableness of their actions raises questions of fact.

¶17. Because there was conflicting testimony, which should have been viewed in a light most favorable to Wallace, and the circuit court looked at the intent of the bail bondsmen rather than the reasonableness of their actions in detaining Wallace, the charge of false imprisonment should have gone to the jury. The circuit court, therefore, erred in directing the verdict in favor of Thornton on this issue.

**III.**

¶18. Wallace next asserts that the circuit court erred in refusing to grant the punitive damages instruction she requested. Instruction P-14 reads as follows:

> Punitive damages are added damages awarded for public service in bringing a wrong doer to account, as an example to warn an[d] deter others from repeating the same act. They are never awarded to benefit the injured party or as a matter of right, but rather to punish and to compel the wrong doer to have due and proper regard for the rights of the public.

> Punitive damages may also be awarded if you find that the intentional actions complained of with regard to the intentional infliction of emotional distress, or the invasion of privacy, or the false imprisonment were of a wanton or malicious nature; or if the negligent acts or omissions complained of were committed by such gross negligence as to be indicative of a wanton and willful disregard of the rights of others.

¶19. "A plaintiff is entitled to punitive damages only if he has demonstrated a willful or malicious wrong or the gross, reckless disregard for the rights of others." *Valley Forge Insurance Co. v. Strickland,* 620 So.2d 535, 540 (Miss.1993), *cert. denied,* 510 U.S. 1024, 114 S.Ct. 635, 126 L.Ed.2d 593 (1993), quoting *Strickland v. Rossini,* 589 So.2d 1268 (Miss.1991). See also *James W. Sessums Timber Co. v. McDaniel,* 635 So.2d 875, 881 (Miss.1994) (punitive damages appropriate in cases of gross negligence). Punitive damages are to be assessed only in "extreme cases," and since they are intended "as an example and warning to others, 'they should be allowed only with caution and within narrow limits.' " *Beta Beta Chapter of Beta Theta Pi Fraternity v. May,* 611 So.2d 889, 894 (Miss.1992), quoting *Consolidated American Life Insurance Co. v. Toche,* 410 So.2d 1303, 1304-1305 (Miss.1982); *Snow Lake Shores Property Owners Corp. v. Smith,* 610 So.2d 357, 362 (Miss.1992). See also *Boling v. A-1 Detective & Patrol Service, Inc.,* 659 So.2d 586, 588-589 (Miss.1995) (punitive damages not appropriate in cases of simple negligence).

¶20. In determining whether the issue of punitive damages should be submitted to the jury, the circuit court must decide " 'whether under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could have found either malice or gross negligence or reckless disregard.' " *Peoples Bank and Trust Co. v. Cermack,* 658 So.2d 1352, 1361 (Miss.1995), quoting *Colonial Mortgage Co., Inc. v. Lee,* 525 So.2d 804, 808 (Miss.1988). At the very least, a jury could have found that Coon and Free exhibited a reckless disregard for Wallace's rights or acted with gross negligence in kicking down her door; in not leaving her apartment after she showed them sufficient identification to prove that she was not the bail jumper they sought; and in insisting that she travel with them from Gautier to Pascagoula. Accordingly, the instruction should have been granted.

### IV.

¶21. The circuit court granted Thornton's Instruction D-4, which reads as follows:

> The court instructs the jury that under the law of the State of Mississippi to be applied to you, a bail bondsman is authorized and empowered to apprehend and to take into custody a person whom he has bonded and who did not appear for a court appearance and such bondsmen may use such reasonable means and reasonable force, as may be necessary to so apprehend such bail jumper.

Wallace asserts that this instruction is an improper statement of the law.

¶22. On appeal, we do not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. *People's Bank and Trust Co. v. Cermack,* 658 So.2d 1352, 1356 (Miss.1995); *Burton v. Barnett,* 615 So.2d 580, 583 (Miss.1993); *Payne v. Rain Forest Nurseries, Inc.,* 540 So.2d 35, 40 (Miss.1989); *Byrd v. F-S Prestress, Inc.,* 464 So.2d 63, 66 (Miss.1985). Therefore, defects in specific instructions do not require reversal "where all instructions taken as a whole fairly--although not perfectly--announce the applicable primary rules of law." *Burton,* 615 So.2d at 583. However, if those instructions do not fairly or adequately instruct the jury, this Court can and will reverse. *Id.* We do not make much comment on this except to say that it appears to be an abstract instruction and may be acceptable if other instructions adequately cover it.

## V.

¶23. The jury awarded Wallace compensatory damages in the amount of $1,000.00. The circuit court denied her motion for an additur. On appeal, she asserts that pursuant to Miss.Code Ann. § 11-1-55 (1972), the damages awarded are contrary to the overwhelming weight of the evidence.

¶24. In reviewing requests for additurs, this Court has stated:

> The scope of appellate review in an additur appeal is limited to determining whether the trial court abused its discretion. *State Highway Comm'n v. Warren,* 530 So.2d 704, 707 (Miss.1988). This Court has further noted that the party seeking the additur has the burden of proving his injuries, damages and loss of income. In determining whether this burden is met, this Court must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn therefrom. Miss.Code Ann. § 11-1-55 (Supp.1990); *Odom v. Roberts,* 606 So.2d 114 (Miss.1992); *Copeland v. City of Jackson,* 548 So.2d 970, 974 (Miss.1989); *Hill v. Dunaway,* 487 So.2d 807, 811 (Miss.1986). Awards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous. *Mississippi State Highway Comm'n v. Antioch Baptist Church,* 392 So.2d 512, 514 (Miss.1981) *citing Toyota Motor Co. v. Sanford,* 375 So.2d 1036 (Miss.1979) and *Womble v. Mississippi State Highway Comm'n,* 239 Miss. 372, 123 So.2d 235 (1960); *see also Standard Products, Inc. v. Patterson,* 317 So.2d 376 (Miss.1975). This is because the amount of damages awarded is primarily a question for the jury. *South Central Bell Telephone Co. v. Parker,* 491 So.2d 212, 217 (Miss.1986); *Edwards v. Ellis,* 478 So.2d 282, 289 (Miss.1985). Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution. *Gibbs v. Banks,* 527 So.2d 658, 659 (Miss.1988).

*Rodgers v. Pascagoula Public School District,* 611 So.2d 942, 945 (Miss.1992).

¶25. Pursuant to Miss.Code Ann. § 11-1-55, an additur may be granted by the court upon finding either that the finder of fact was influenced by bias, prejudice or passion, or that the amount of the award was contrary to the overwhelming weight of the evidence. *Green v. Grant,* 641 So.2d 1203, 1208 (Miss.1994). Wallace put on proof that as a result of the incident in question, she had been diagnosed by Dr. William W. Dreher, Ph.D., as suffering from post-traumatic stress syndrome. There was further proof that she also had suffered from post-partum depression after the birth of her older daughter in 1987, which, Dr. Dreher testified, might have increased her susceptibility to the injury claimed. Wallace stated that she

had incurred counseling expenses of $290.00. She put on no proof of the severity of her injuries, nor of lost wages or other damages.

¶26. The jury was properly instructed on compensatory damages as well as on damages for pain and suffering. Given the uncontroverted evidence and looking at it, as we must, in a light most favorable to Thornton, we cannot say that the award was against the weight of the evidence or was the product of bias, passion or prejudice.

## VI.

¶27. When granting Thornton's motion for a directed verdict on the issue of false imprisonment, the circuit court failed to look at the evidence in a light most favorable to Wallace, and erroneously looked at the bondsmen's intent rather than the reasonableness of their actions. Further, it was error to deny the punitive damages instruction which Wallace sought. We do not, however, hold the circuit court in error for refusing to grant Wallace's motion for an additur. Accordingly, we reverse and remand for a new trial consistent with this opinion.

**¶28. REVERSED AND REMANDED.**

**DAN M. LEE, C.J., PRATHER, P.J., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur. SULLIVAN, P.J., not participating.**

1. Thornton died after this appeal was filed.

2. Although Coon testified at trial, the charges against him were dismissed without prejudice because he was not properly noticed of the trial.