738 So.2d 280 (1999)
Jimmy J. RAWSON, Appellant/Cross-Appellee,
v.
MIDSOUTH RAIL CORPORATION, A Corporation, and Kansas City Southern Railway Company, A Corporation, Appellee/Cross-Appellants.
No. 97-CA-00898COA.
Court of Appeals of Mississippi.
February 23, 1999.
Rehearing Denied May 18, 1999.
Certiorari Denied August 26, 1999.
*282 Frank O. Burge, Jr., John Raymond Tullos, Raleigh, Attorneys for Appellant.
Charles T. Ozier, Charles Edwin Ross, Jackson, Attorneys for Appellee.
BEFORE THOMAS, P.J., DIAZ, and SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Jimmy J. Rawson appeals the trial court's grant of remittitur to Kansas City Southern Railway Company (KCS), raising the following issues as error:
I. THE TRIAL COURT ERRED IN GRANTING A REMITTITUR TO KCS AS THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT THE VERDICT OF THE JURY IN FAVOR OF PLAINTIFF IN THE AMOUNT OF $187,500.
II. THE TRIAL COURT ERRED IN GRANTING KCS A NEW TRIAL UNLESS PLAINTIFF REMITTED $112,500.
¶ 2. KCS cross-appeals, raising the following issues as error:
I. THE VERDICT IS CONTRARY TO THE OVERWHELMING *283 WEIGHT OF THE EVIDENCE, THEREBY NECESSITATING A NEW TRIAL.
II. KCS IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW.
III. A NEW TRIAL IS NECESSARY BECAUSE THE JURY WAS ALLOWED TO CONSIDER, THROUGH PLAINTIFF'S JURY INSTRUCTION P-13, AS AMENDED, AN ELEMENT OF DAMAGES NOT SUPPORTED BY CREDIBLE EVIDENCE.
IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING INSTRUCTION P-7.
V. THE TRIAL COURT ERRED BY ADMITTING PICTURES OF THE KCS MERIDIAN YARD TAKEN IN 1997, ALMOST SIX YEARS AFTER THE ACCIDENT.
VI. THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF THE LIGHTING IN THE NORFOLK SOUTHERN YARD THROUGH PHOTOGRAPHS WHICH WERE TAKEN IN APRIL 1997, ALMOST SIX YEARS AFTER THE ACCIDENT.
VII. THE TRIAL COURT ERRED BY ALLOWING EVIDENCE OF PRIOR COMPLAINTS BY RAILROAD EMPLOYEES ABOUT PULPWOOD LITTER IN THE YARD WHEN THESE PRIOR COMPLAINTS WERE NOT TIED TO THE DATE OF THE PLAINTIFF'S ACCIDENT.
¶ 3. Finding no reversible error, we affirm.

FACTS
¶ 4. Jimmy J. Rawson was a twenty-eight-year veteran railroad conductor with Kansas City Southern Railroad Company and its predecessors. Rawson was injured one night when he tripped over a piece of pulpwood which was lying in an area between two trains at KCS's Meridian yard. Rawson was "bleeding air" from railroad freight cars so that the breaking systems on those cars would allow them to be moved. Rawson carried a flashlight (also referred to as a railroad lantern), primarily to keep from bumping into the trains which were parked on either side of him. The yard was lighted, but the cars of the trains on either side of Rawson prevented any light from reaching where Rawson was walking. Rawson injured his back as a result of his fall.
¶ 5. Rawson sued KCS under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51-56. Rawson alleged that KCS was negligent because of a general problem with pulpwood in the yard, for failing to inspect the yard, inadequate lighting at the yard, and an improper clearance between tracks 9 and 10, the site of the accident. The jury returned a general verdict in favor of Rawson in the amount of $187,500. The circuit court granted a remittitur of $112,500, making the final verdict $75,000. Rawson initially accepted this verdict of $75,000. However, upon motion of KCS the verdict was amended to give KCS a credit of $7,853.11 for wage advancements which Rawson agreed to pay back in the event of a judgment against KCS. From this decision Rawson appeals and KCS cross-appeals.

ANALYSIS

I.
THE TRIAL COURT ERRED IN GRANTING A REMITTITUR TO KCS AS THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT THE VERDICT OF THE JURY IN FAVOR OF PLAINTIFF IN THE AMOUNT OF $187,500.

II.
THE TRIAL COURT ERRED IN GRANTING KCS A NEW TRIAL UNLESS PLAINTIFF REMITTED $112,500.
¶ 6. Rawson argues that in order for a trial court to grant a motion for *284 remittitur the movant must prove that either the jury was influenced by bias, prejudice, or passions, or that the jury's verdict was contrary to the overwhelming weight of credible evidence. Miss.Code Ann. § 11-1-55 (Rev.1991). Rawson argues that KCS totally failed to demonstrate either in this case, and therefore, the trial court decision to grant a remittitur was in error.
¶ 7. A trial court's authority to grant a remittitur is found in Miss.Code Ann. § 11-1-55 (Rev.1991), which reads as follows:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
¶ 8. Our supreme court has held that when the trial court has granted a remittitur then the plaintiff has three courses of action. The plaintiff may elect (1) to reject the remittitur and have the case retried on the issue of damages only, (2) to appeal on grounds the circuit court should not have granted the remittitur at all, or, alternatively, the remittitur granted was legally excessive, or, (3) to accept the remittitur. Odom v. Roberts, 606 So.2d 114, 121 (Miss.1992). In the instant case, Rawson has appealed to us arguing the granting of the remittitur by the trial court was in error.
¶ 9. Our scope of review, when an appellant declines to accept a remittitur and appeals to us on grounds that the remittitur should not have been granted, is limited to the question of whether the trial court abused or exceeded its discretion. Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1193 (Miss.1996) (citations omitted). Our supreme court has also held that "[a]wards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Wallace v. Thornton, 672 So.2d 724, 729 (Miss.1996) (citations omitted). Put another way, the trial judge may only usurp the jury's function in setting a damage award, when he finds, as per the statute, either: (1) that the jury's verdict is so shocking to the conscience that it evinces bias, passion, and prejudice on the part of the jury; or (2) that the verdict was contrary to the overwhelming weight of the credible evidence. State Highway Comm. of Mississippi v. W.W. Warren, 530 So.2d 704, 707 (Miss.1988). "Absent either of these findings, the trial court abuses its discretion." Id.
¶ 10. In the case sub judice, the jury returned a verdict for Rawson in the amount of $187,500. The trial court granted KCS's motion for remittitur reducing the amount awarded by $112,500 to $75,000. The trial court also granted KCS's motion to receive a credit of $7,853.11 against the remitted judgment. The trial court's order on the remittitur reads as follows:
1. The verdict rendered by the jury in the amount of $187,500 is against the overwhelming weight of the evidence and is so excessive as to evince bias, passion and prejudice against the Defendants on the part of the jury;
2. A remittitur should be entered so as to reduce the amount of the verdict by *285 the amount of $112,500 to a remitted verdict in the amount of $75,000.
. . . .
IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff has ten days from the date of entry of this order within which to accept said remittitur and remitted verdict or request a new trial on damages alone.
The trial court's order to grant the credit was as follows:
IT IS THEREFORE ORDERED, that the prior order of this Court dated June 18, 1997, be amended. The Defendant's motion for a new trial as it relates to damages only is granted conditioned on the Plaintiff's acceptance in writing with the Clerk of this Court within ten days of the day of this judgment a remittitur to a sum of $75,000.00 total recovery against the railroad. The Defendants shall be entitled to a credit of $7,853.11 against this judgment for advanced payments.
¶ 11. After a careful examination of the record, we hold that the trial court did not abuse its discretion and acted properly in granting the remittitur as the verdict was against the overwhelming weight of the evidence and was so excessive as to evince bias, prejudice, and passion against KCS on the part of the jury. We also hold that it was not an abuse of discretion for the trial court to grant a credit to KCS for advanced payments of the judgment or to order that Rawson had ten days to accept the remittitur or request a new trial on damages alone.
¶ 12. Rawson was injured on July 16, 1991. Rawson returned to full duties sometime after October 23, 1991, the day he was released by the company doctor to return to full work. Rawson missed approximately three months of work and lost wages during this time totaling approximately $7,500. These lost wages were then advanced to Rawson by KCS to be paid back only if Rawson received a judgment against or settlement from the railroad. Rawson also testified to missing about eighty days due to pain from his back in 1992, 1993, and 1994. During this time, lost wages equaled approximately $12,300.
¶ 13. Rawson received emergency room treatment for his injury the day after the accident. X-rays were taken which showed no fractures. Rawson received some pain medication from the emergency room physician and was sent home. Thereafter, Rawson received treatment for his back from Dr. Gary Gordon. Rawson saw Dr. Gordon approximately six times over a three month period. Dr. Gordon proscribed pain medication to Rawson along with instructions to restrain from work, soak his back in hot water, restrain from lifting or bending, and begin physical therapy. Over the three months Rawson saw Dr. Gordon, Rawson described his back problem as getting progressively better. On his last visit to Dr. Gordon, Rawson said he was totally pain free and would like to return to unrestricted work. Dr. Gordon ordered that Rawson could return back to unrestricted work, which Rawson did shortly thereafter.
¶ 14. Rawson also saw three other doctors concerning his back pain. Although these doctors did not testify at trial, Rawson testified about them during cross-examination. On cross-examination Rawson testified that he saw Dr. Dare, an orthopedic specialist, Dr. Abangan, a bone specialist, and Dr. Cameron. Rawson admitted on cross-examination that Dr. Dare told him that he would have to live with his back problem and that none of the doctors placed any type of restrictions on him. Rawson was never hospitalized for his injury, no surgery was ever performed on Rawson's back, nor was there any testimony that any surgery was ever recommended. All medical bills were paid by KCS's company insurance except those expenses associated with Dr. Abangan.
¶ 15. Rawson testified that he had some type of pain every day since the accident. He further testified that light duty actually *286 aggravated his back pain. It was for this reason that Rawson asked Dr. Gordon to let him go back to full work and told Dr. Gordon his back was pain free. However, when he returned to full work Rawson testified he had to change the manner in which he performed his job. Rawson testified that certain tasks he had performed for the railroad for years could no longer be completed without pain. Before the accident Rawson testified he was an avid hunter and fisherman but after the accident he had done neither. Rawson also testified that his home was heated by a wood burning heating system which was replaced since he could no longer carry wood into the house.
¶ 16. Charles W. Webb, an employee of KCS, testified that he never heard Rawson complain about his back until the accident and that since the accident Rawson complained every day he worked with Webb. Mitchell Clark, another KCS employee, testified that he worked with Rawson subsequently to the injury and that Rawson complained of back pain. Joe Green, Rawson's immediate supervisor, testified that up until the accident Rawson was a good employee. Green further testified that after the accident Rawson complained of stiffness and mobility problems with his back but never mentioned that he could not perform his work.
¶ 17. The amount of Rawson's lost wages equaled approximately $19,800, $12,300 of which were hotly contested by KCS. We are left with $167,700 of the verdict attributable to pain and suffering. Generally, "the only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages." Green v. Grant, 641 So.2d 1203, 1208 (Miss.1994) (quoting Biloxi Elec. Co., Inc., v. Thorn, 264 So.2d 404, 406 (Miss.1972)). We hold that the evidence as presented could reasonably demonstrate to the trial court an inference that the jury was influenced by "bias, prejudice, or passion." Rawson told Dr. Gordon his back problem was resolved, and he no longer had pain (although at trial he stated he told Dr. Gordon this so he could be phased back into his old position). Rawson went back to full work and only stopped working after being involved in another accident unrelated to the case at bar. The trial court was well within its discretion to order the remittitur, and we hold that such was not an abuse of discretion.

CROSS-APPEAL

I.

THE VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE, THEREBY NECESSITATING A NEW TRIAL.
¶ 18. KCS argues that although it was well within the discretion of the trial court to order a remittitur that the trial court abused its discretion in not granting a new trial as to all issues. First, KCS asserts that on the issue of damages a new trial is required as the jury returned a general verdict with no indication of how it apportioned fault and that given the amount of the verdict compared to the basic fundamental facts "sound judgment" requires a new trial as to all issues. Next, KCS asserts that the evidence does not support Rawson's four primary allegations to establish negligence and therefore, a new trial is warranted. Rawson asserted that KCS was negligent because of a general problem with pulpwood in the yard, for failing to inspect the yard, inadequate lighting at the yard, and an improper clearance between tracks 9 and 10, where the incident occurred. KCS argues that the evidence shows that there was no general problem with pulpwood in the yard, KCS had a regular inspection, reporting, and safety program, Rawson carried a railroad lantern which was adequate to do the job, and that the yard met all applicable federal railroad standards.
*287 ¶ 19. After the verdict was rendered, KCS filed a motion for a judgment notwithstanding the verdict, or a new trial, or a remittitur. A new trial can be granted by the trial court pursuant to M.R.C.P. 59. We will reverse a trial court's denial of a request for a new trial only where such a denial amounts to an abuse of discretion. Shields v. Easterling, 676 So.2d 293, 298 (Miss.1996).
¶ 20. We hold that the trial court did not abuse its discretion in not granting a new trial on all issues. In regard to the damages issue, under FELA juries can be instructed to return a general verdict. Seaboard Systems R.R., Inc. v. Cantrell, 520 So.2d 479, 485 (Miss.1987). Furthermore, while it was proper of the trial court to grant a remittitur, the fact of the matter is that there was credible evidence supporting damages in this case. Although the verdict was excessive and evinced bias (as demonstrated by the trial court's order for remittitur and our holding that such was not an abuse of discretion), this in and of itself does not require a new trial. As discussed above, Miss.Code Ann. § 11-1-55 (Rev.1991) gives authority to the trial court to grant a remittitur in such an instance. We have already held that the granting of the remittitur in this case was not an abuse of discretion.
¶ 21. We further hold that it was not an abuse of discretion for the trial court not to grant a new trial on the issue of negligence. KCS is correct in asserting that evidence existed that showed or tended to show that KCS was not negligent. Photos taken the day after accident showed that the yard was not "littered" with pulpwood. Railroad employees who testified that the yard was in poor condition could not give specific dates when the yard was in an unsatisfactory condition. Rawson never complained about pulpwood in the yard although he admitted he had a duty to report unsafe conditions. There was testimony that safety meetings were held on a regular basis and that employees were given an opportunity to raise any complaints. A three man maintenance crew was charged with the upkeep of the yard and to respond to any complaints about the yard. Rawson testified that it was customary and standard for railroad employees to switch cars at night with no other lighting than a hand held lantern.
¶ 22. However, what KCS fails to realize is that sufficient evidence existed that showed that KCS could be found negligent by the jury. Photos after the accident showed the piece of pulpwood responsible for Rawson's fall, and the evidence supported a reasonable inference that it had been there for some time given the debris buildup around it. Mitchell Clark, an employee of KCS and its predecessors for 31 years, testified that on more than one occasion in July 1991 or prior thereto, he asked that the yard be cleaned of pulpwood. Clark testified that these requests were sometimes immediately addressed, sometimes taken care of after three or four days, and sometimes never addressed. Chester Parker, a KCS employee who had worked at various railroads for 31 years, testified that there was no regular clean up of the yard. He further testified that the section crew and foreman would clean up the yard if there was a problem, but only when time permitted. Jerry Shelby, another KCS employee who had worked with railroads for 31 years, testified that a retiree would sometimes come to the yard picking up pieces of pulpwood which he would then resell. Charles Webb, who had worked for KCS for 38 years, testified that since KCS took over the railroad yard in question that the pulpwood problem had progressively deteriorated to a point where in July 1991, "Well, it was down. It was bad." He further testified that if he made a request for a clean up that sometimes it would be done and sometimes it would not be done.
¶ 23. Reasonable minds could differ on the issues of breach of duty and proximate cause in this case. Whether or not KCS was negligent was a question for the jury. Sufficient evidence was presented to support *288 the jury's verdict as to negligence. As a result, the trial judge did not abuse his discretion in refusing to grant KCS a new trial.

II.

KCS IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW.
¶ 24. KCS argues that there was no evidence to support a negligence finding against the railroad. Furthermore, KCS maintains that the sole cause of Rawson's accident was his own failure to exercise reasonable care for his own safety. Therefore, KCS was entitled to a judgment as a matter of law.
¶ 25. Our standard of review when the trial court denies a motion for a judgment notwithstanding the verdict is as follows:
Where, as here, the trial judge has refused to grant a motion for JNOV, we examine all of the evidencenot just evidence which supports the non-movant's casein the light most favorable to the party opposed to the motion. All credible evidence tending to support the non-movant's case and all favorable inferences reasonably drawn therefrom are accepted as true and redound to the benefit of the non-mover. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, the motion should be granted. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand and the motion denied, and, if it has been so denied, we have no authority to reverse.
Mississippi Valley Gas Co. v. Estate of Walker, 95-CA-00907-SCT (¶ 9.), 725 So.2d 139, 142 (Miss.1998) (quoting C & C Trucking Co. v. Smith, 612 So.2d 1092, 1098 (Miss.1992)).
¶ 26. As discussed above, sufficient evidence existed to show that KCS was negligent. KCS's primary argument under this assignment is an attempt to skirt liability based on the fact that Rawson was the sole cause of his accident. KCS maintains that Rawson was the sole cause of his accident for failing to illuminate the walkway with the railroad lantern he was using. KCS points to the fact Rawson testified that he was not shining the light on the ground at the time of the accident. We find this argument unpersuasive (we also find it curious and can only speculate as to whether KCS would attempt a similar argument had Rawson injured himself by bumping into the train cars on the side while the entire time keeping the lantern pointed to the ground).
¶ 27. The fact of the matter is Rawson testified that there was not much room between the two cars where the accident occurred. He further testified that it was "real dark" and to see where he was going it was necessary to shine the light to the sides of where he was walking to avoid running into the train cars along tracks 9 and 10. Suffice it to say that it was not improper of the trial court to refuse to grant the JNOV.

III.

A NEW TRIAL IS NECESSARY BECAUSE THE JURY WAS ALLOWED TO CONSIDER, THROUGH PLAINTIFF'S JURY INSTRUCTION P-13, AS AMENDED, AN ELEMENT OF DAMAGES NOT SUPPORTED BY CREDIBLE EVIDENCE.
¶ 28. KCS argues that there was no medical evidence to support Rawson's contention that as a result of his injury he missed days of work after October 1991. According to KCS, the only evidence to support Rawson's claim that he missed days of work because of back pain in 1992, *289 1993, and 1994 was Rawson's own unsubstantiated testimony. KCS points to the fact that its own records show that the reasons given by Rawson for taking off work after October 1991 were never due to his back injury. As such, KCS argues it was reversible error to grant Instruction P-13. KCS bases its argument on a reading of Parra v. Atchison, Topeka & Sante Fe Railway Co., 787 F.2d 507, 509 (10th Cir.1986). Parra holds that "[w]here the injury is obscure, as here, a loss of future earnings capacity must be established by expert medical testimony in order to avoid pure speculation on the part of the jury." Id. (citations omitted). Parra goes on to hold that "expert medical testimony is necessary to establish that a loss of future earnings capacity was caused by such a non-obvious injury." Id.
¶ 29. Instruction P-13 reads as follows:
In arriving at the amount of the award to be given to the plaintiff for past lost wages, you should include in your award the reasonable value of the lost income, if any, shown by the evidence in the case to have been necessarily lost up to December of 1994 by the plaintiff since his injury, because of his being unable to pursue his occupation as a result of the injury. In determining this amount, you should consider any evidence of plaintiffs earning capacity, his earnings, and the manner in which he ordinarily occupied his time before the injury, and find what he was reasonably certain to have earned during the time so lost, had he not been injured.
¶ 30. With regard to jury instructions our supreme court has held that "[j]ury instructions are to be granted only where evidence has been presented which supports the instruction." DeLaughter v. Lawrence County Hospital, 601 So.2d 818, 824 (Miss.1992) (citations omitted). Our supreme court has also held that "[b]efore a jury may be instructed upon a specific element of damages, there must be some testimony to support that element." Id. (citations omitted).
¶ 31. In Parra, the plaintiffs own physician testified that before his accident the plaintiff suffered from a congenital back disorder which made him more susceptible to lower back injury and would have disqualified him from work as a heavy laborer had it been detected. Parra, 787 F.2d at 509. The plaintiffs physician further testified that the plaintiffs back was more stable after surgery for his accident than prior to his accident. Id. Under these facts and conditions the court found it improper for the plaintiff to be compensated for future wages from heavy labor in the absence of any expert testimony on the injury and its impact on earning capacity. Id. The court held that expert testimony was needed to avoid speculation on part of the jury. Id.
¶ 32. In the instant case, the jurors were not faced with the problems confronting the jurors in Parra. In Parra, the plaintiffs back condition and injury were complicated and not susceptible to observation by the jury. Id. In the case at bar it came down to a jury question on whether or not to believe Rawson or Joe H. Green. Rawson himself testified to missing work as a result of his back injury. However, Green, Rawson's immediate supervisor, testified that his own records showed that Rawson missed approximately 33 days in 1994 for various reasons, none of which included back pain. KCS never introduced these records into evidence. Green testified strictly from memory. The jury was left with believing either Rawson or Green. As such, a clear question existed for the jury.
¶ 33. The jury did not have to speculate on Rawson's injury. Although no medical testimony was introduced showing that Rawson's still experienced back pain after returning to full work, it was undeniable and supported with medical testimony that he did in fact suffer a back injury. Whether or not Rawson still had pain associated with his back after October 1991 was a question for the jury. Since testimony existed supporting Rawson's contention *290 that he suffered back pain after October 1991 and lost work because of such pain, the jury instruction was proper.

IV.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING INSTRUCTION P-7.
¶ 34. KCS argues that instruction P-7 was misleading and misstated the law. KCS maintains P-7 peremptorily tells the jury what their finding of fact must be when the facts were in dispute, and eliminated the defense of comparative negligence in a significant aspect of the case. Instruction P-7 reads as follows:
The plaintiff is not negligent simply because the plaintiff's job responsibilities caused him to work at a dangerous job, or in a dangerous place, or under dangerous conditions.
¶ 35. First, KCS asserts this instruction peremptorily tells the jury that Rawson worked at a "dangerous job, or in a danger place, or under dangerous conditions." Such peremptory language, KCS argues, could not help but bias the jury unduly against the railroad. Second, KCS contends that if the jury found that Rawson's own negligence was the sole cause of the accident, then Rawson would not be entitled to any recovery, despite a finding of negligence on the part of KCS. According to KCS, Instruction P-7 implies exactly the opposite, and thus was tantamount to telling the jury that Rawson cannot be found comparatively negligent.
¶ 36. When we review jury instructions, we do not review such in isolation, rather, we read the instructions as a whole to determine if the jury was properly instructed. Wallace v. Thornton, 672 So.2d 724, 729 (Miss.1996). "Therefore, defects in specific instructions do not require reversal `where all instructions taken as a whole fairlyalthough not perfectly announce the applicable primary rules of law.'" Wallace, 672 So.2d at 729 (quoting Burton v. Barnett, 615 So.2d 580, 583 (Miss.1993)). However, if the instructions do not fairly or adequately instruct the jury, we can and will reverse. Wallace, 672 So.2d at 729.
¶ 37. We hold that although P-7 could have been worded or crafted slightly better, the instruction when read with all others was not error. In this case, KCS requested and received Instructions D-6 and D-10. Both dealt with what KCS perceived as problems with P-7. When read as a whole the instructions properly charged the jury. D-6 and D-10 read respectively as follows:
D-6
The Federal Employers' Liability Act requires that in order for the Plaintiff to be entitled to recover any amount under the Act, he must first prove by a preponderance of the evidence that the Defendant MidSouth Rail Corporation was guilty of negligence which caused, in whole or in part, the accident and the Plaintiff's injuries, if any. Even if you believe that the Plaintiff was injured while walking beside the railroad tracks in the railroad's yard, that alone does not make MidSouth Rail Corporation liable, nor does it raise a presumption of negligence on the part of MidSouth Rail Corporation under the Federal Employers' Liability Act. In other words, the Federal Employers' Liability Act does not make the railroad an insurer of the safety of its employees. Instead, MidSouth Rail Corporation is liable and the Plaintiff can only recover if the Plaintiff proves, by a preponderance of the evidence, that the Defendant MidSouth Rail Corporation was guilty of negligence, and that such negligence, if any, caused in whole or in part the accident and the Plaintiff's injuries. Therefore, unless you believe that the Plaintiff has met this burden of proof by a preponderance of the evidence, it would be your sworn duty to return a verdict for Defendants MidSouth Rail Corporation *291 and Kansas City Southern Railway Company.
D-10
The Court instructs the jury that if you find from a preponderance of the evidence that:
(1) The Plaintiff Jimmy Rawson, while walking along the walkway in the railroad yard, failed to properly use his light or lantern and failed to keep a reasonable lookout as to where he was walking;
(2) That if the Plaintiff had properly used his light or lantern and kept a reasonable lookout as to where he was walking, he could have seen the piece of pulpwood in sufficient time to step around or over it;
(3) Such conduct on the part of the Plaintiff constituted negligence; and
(4) Such negligence, if any, was the sole cause of the Plaintiffs accident and injuries,
then it will be your sworn duty to return a verdict for Defendants MidSouth Rail Corporation and Kansas City Railroad Company.

V.

THE TRIAL COURT ERRED BY ADMITTING PICTURES OF THE KCS MERIDIAN YARD TAKEN IN 1997, ALMOST SIX YEARS AFTER THE ACCIDENT.
¶ 38. KCS maintains that the 1997 pictures of the walkway between tracks 9 and 10 should not have been admitted because the pictures did not substantially show the condition of the walkway as it existed the night of the accident, no witness pointed out or explained the material changes to the walkway with respect to the 1997 photographs as compared to the walkway the night of the accident, there was no causal connection between the reason the photographs were purportedly introduced and Rawson's accident, and any probative weight that the 1997 photographs might have had was far outweighed by their prejudicial effect.
¶ 39. The introduction of photographs is a matter for the sound discretion of the trial court and that court is afforded wide latitude in exercising this discretion. Del Couch v. City of D'Iberville, 656 So.2d 146, 153 (Miss.1995). On the introduction of photographs, our supreme court has stated:
All that is required, as to the time of making photographs, is that they be verified as substantial representations of the conditions as they existed at the time in question. Oral proof can explain the changed conditions. "Photographs of the scene of an accident taken at or near the time are not always obtainable, and the only practical rule would seem to be that the changes must not be such as to destroy their substantial identity and that the changes, whatever they may be, should be carefully pointed out and brought to the jury's attention." 20 Am.Jur., Sec. 731, p. 611.
Givens v. State, 618 So.2d 1313, 1316 (Miss.1993) (quoting Hancock v. State, 209 Miss. 523, 536, 47 So.2d 833, 839 (1950)).
¶ 40. We hold that the trial court did not abuse it discretion in this instance. The purpose of the photographs was to show the distance between tracks 9 and 10. Mitchell Clark, the sponsoring witness for the photographs, testified that the distance between the tracks was the same as it existed in July 1991. Thus, the photographs were probative and relevant to show that distance. Furthermore, the jury was made amply aware that these photographs were taken years after the accident, and the sponsoring witness testified only about the distance between the tracks and not the condition between the tracks or what was between the tracks. In addition, the jury was also presented with the photographs of the condition of the walkway taken the day after the accident. *292 The photographs were properly admitted.

VI.

THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF THE LIGHTING IN THE NORFOLK SOUTHERN YARD THROUGH PHOTOGRAPHS WHICH WERE TAKEN IN APRIL 1997, ALMOST SIX YEARS AFTER THE ACCIDENT.
¶ 41. Rawson introduced evidence that showed the Norfolk yard, only a half mile from KCS's Meridian yard, had taller lights than did KCS at its Meridian yard. Rawson then used this evidence as a basis for arguing that the lighting in the Meridian yard was inadequate. KCS argues that the introduction of evidence of the lighting in the Norfolk yard, in the form of both witness testimony and photographs, was not relevant to the standard of care issue, and was misleading and confusing. KCS maintains that no expert witness testified that the Norfolk lights were standard in the industry, no expert witness testified as to any standard in regard to any lighting in rail yards, and no expert witness testified that the lights in KCS's yard were inadequate with regard to any standard. As such, KCS asserts that the photographs should not have been admitted.
¶ 42. We agree. The introduction of the photographs of the Norfolk yard was improper given the fact that Rawson put on no evidence, in the form of expert testimony, of industry standards with regard to lighting in a rail yard. Rawson used Mitchell Clark, an employee for KCS and its predecessors, to sponsor the photographs of the lighting in the Norfolk yard. However, no testimony was given that such lights were common in the railroad industry and that a failure to have such light constituted a breach of any applicable standard of care regarding negligence. It would be pure speculation on the jury's part to conclude that KCS was negligence for failing to have such lights.
¶ 43. However, we likewise hold as harmless error the introduction of these photographs. KCS clearly presented evidence to the jury that when one walks between two railroad cars they are so tall as to block out light from overhead lights. In this instant, Rawson was proceeding between two railroad cars when he tripped over the piece of pulpwood. Rawson admitted that although the yard had overhead lights the railroad cars were blocking it out. Furthermore, Rawson testified that under such conditions it was normal and customary to use the railroad lantern. Clark, the sponsoring witness for the photographs, testified that the taller light in the Norfolk yard would not have provided adequate light between two railroad cars for the job Rawson was performing, and that one would have to use a railroad lantern for such a job. Under such circumstances, we see no reason to require a new trial.

VIII.

THE TRIAL COURT ERRED BY ALLOWING EVIDENCE OF PRIOR COMPLAINTS BY RAILROAD EMPLOYEES ABOUT PULPWOOD LITTER IN THE YARD WHEN THESE PRIOR COMPLAINTS WERE NOT TIED TO THE DATE OF THE PLAINTIFF'S ACCIDENT.
¶ 44. KCS argues that the prior complaint testimony said nothing about the condition of the yard at the time of the accident, and given the fact the testimony was not related in time to Rawson's accident the testimony said nothing about KCS's maintenance or upkeep of the yard in July 1991. Therefore, KCS asserts it was reversible error for the trial court to allow such testimony. KCS also contends that M.R.E. 404(b) prohibits evidence of prior occurrences to show negligence.
¶ 45. On this assignment of error KCS points to two instances of witnesses' failure *293 to relate their prior complaints to the date of the accident. KCS first complains that witness Mitchell Clark was able to testify about pulpwood in the yard and clean up of the yard, despite the fact he was on vacation for the first two weeks of July 1991. KCS also complains about witness Jerry Shelby who testified about comments made by his crew at safety meetings which happened sometime after 1986.
¶ 46. We hold that this testimony was properly admitted except that testimony given by Shelby. Shelby testified "prior to July 1991" that he had made requests for a clean up of the yard and that members of his crew had called for clean up of the yard "prior to July 1991." Shelby could not be more specific in his recollection of any complaints except that complaints were made "probably in 1990." Such testimony was too remote to be relevant, and as such should have been excluded. However, we hold as harmless error the introduction of Shelby's testimony given the overwhelming evidence of complaints about the need to clean up the yard made in July 1991.
¶ 47. The testimony about prior complaints was properly admitted because the complaints related to July 1991 and shortly before. The testimony was also proper as it related to KCS's knowledge or notice of the dangerous condition of pulpwood in the yard. Clark testified that "in July of 1991 and prior thereto" he had called for the need of a clean up of the yard. Chester Parker testified that there was no regular clean up of the yard "in July 1991 or prior thereto." Webb testified that he had made requests "during the last six months of 1990 and the first six months of 1991" for a clean up of the yard. Webb testified that "by July of 1991" that the clean up of the yard, "Well, it was down. It was bad."
¶ 48. There was nothing remote about this testimony and consequently, this assignment of error is without merit.
¶ 49. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED ON CONDITION THAT JIMMY J. RAWSON ACCEPT WITHIN TEN DAYS OF THE ISSUANCE OF THE MANDATE OF THIS OPINION A REMITTITUR OF $112,500, THEREBY REDUCING THE JUDGMENT TO $75,000, WITH A CREDIT OF $7,853.11 TO BE GIVEN TO KANSAS CITY SOUTHERN RAILROAD FOR ADVANCED PAYMENTS OF THIS JUDGMENT. HOWEVER, UPON FAILURE OF JIMMY J. RAWSON TO ACCEPT SAID REMITTITUR, THEN THIS CAUSE IS REVERSED AND REMANDED FOR A NEW TRIAL ON THE ISSUE OF DAMAGES ALONE. ONE-THIRD OF THE COSTS OF THIS APPEAL ARE TO BE ASSESSED TO JIMMY J. RAWSON AND TWO-THIRDS OF THE COST OF THIS APPEAL ARE TO BE ASSESSED TO KANSAS CITY SOUTHERN RAILROAD.
BRIDGES, C.J., McMILLIN, P.J., and SOUTHWICK, JJ., CONCUR.
DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, KING and PAYNE, JJ.
IRVING and LEE, JJ., NOT PARTICIPATING.
DIAZ, J., dissenting:
¶ 50. I respectfully dissent from the majority's decision to affirm the judgment of the trial court which granted a remittitur of $112,500 against the jury award received by Rawson for his claim that KCS was negligent in maintaining the safety of his work place.
¶ 51. The majority finds that the disparity in the monetary verdict awarded by the jury between the lost wages that Rawson was compensated and his pain and suffering is evidence of passion, prejudice, or bias on the part of the jury. In essence, the majority would substitute the informed decision of the jury for that of the trial judge and themselves. The trial judge may only order a remittitur if he concluded *294 that the damage award was excessive because the jury had been influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of the evidence. Miss.Code. Ann. § 11-1-55 (1972).
¶ 52. The standard of review for considering a remittitur on appeal is limited to determining whether the trial court abused its discretion. Odom v. Roberts, 606 So.2d 114 (Miss.1992). A remittitur should never be applied without taking great caution, for a remittitur represents a "judicial incursion into the traditional habitat of the jury." Gibbs v. Banks, 527 So.2d 658, 659 (Miss.1988). Furthermore, "awards fixed by a jury determination are not merely advisory, and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Rodgers v. Pascagoula Public Sch. Dist., 611 So.2d 942, 945 (Miss.1992). "This Court will not vacate or reduce an award of damages, `unless it is so out of line as to shock the conscience of the Court.'" Ross-King-Walker v. Henson, 672 So.2d 1188, 1194 (Miss.1996)(citing Kern v. Gulf Coast Nursing Home of Moss Point, Inc., 502 So.2d 1198, 1201 (Miss.1987)(holding that Court has never placed arbitrary cap on punitive damage award so that punitive damage award would only be triple actual damage award)). In reversing a trial court's order of remittitur, the Mississippi Supreme Court reiterated the standard for judges considering awarding a remittitur:
Judges cannot sit as jurors, and the question before them is never what they would have done sitting as a juror but whether, considering the evidence in the light most favorable to the non-moving party, together with all reasonable inferences which may be drawn therefrom, the court should disturb the jury verdict.
Holmes County Bank & Trust v. Staple Cotton Co-op., 495 So.2d 447, 451 (Miss. 1986). "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria & Perkin Union Ry., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944).
¶ 53. Once the jury has returned a verdict in a civil case, we are not at liberty to enter a judgment contrary to the jury's verdict unless we decide that, given the evidence as a whole considered in a light most favorable to the verdict, no reasonable hypothetical juror could have found as the jury found. Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985). In a civil case, the jury's verdict is a finding of fact. Edwards v. Ellis, 478 So.2d 282, 289 (Miss.1985). Therefore, even if we think the jury's verdict is liberal, we cannot supplant our judgment, nor can the trial judge, for that of the jury unless it is decided that insufficient evidence existed to support the award of damages or that the verdict was the product of bias, passion, or prejudice. South Central Bell Telephone Co., Inc. v. Parker, 491 So.2d 212, 217 (Miss.1986).
¶ 54. In Woods v. Nichols, 416 So.2d 659, 672 (Miss.1982), the Mississippi Supreme Court approved a jury verdict with a substantial disparity between the punitive and actual damages awarded as in the instant case and also listed numerous other cases where large jury verdicts were affirmed. The Woods case also outlined several elements for damages that a jury might consider, including: the degree of physical injury, mental and physical pain, present and future, temporary and permanent disability, medical expenses, loss of wages and wage-earning capacity, sex, age and plaintiffs state of health. Id. at 671.
¶ 55. The majority states that a careful examination of the record reveals that the trial court did not abuse its discretion and acted properly in granting the remittitur because the verdict was against the overwhelming weight of the evidence and was so excessive as to evince bias, prejudice, and passion against KCS on the part of the *295 jury. However, the majority proceeds to describe Rawson's injury including his testimony of his pain and suffering and work and lifestyle restrictions after the accident. Although some of Rawson's testimony about his physical impairments was controverted at trial, the jury returned a general verdict for Rawson in the amount of $187,500. There is no evidence in the record that the jury returned this verdict because of bias, prejudice, or extreme passion thereby requiring the trial judge to enter a remittitur in the amount of $112,500. The trial judge abused his discretion by ordering this remittitur and substituting his judgment for that of the trier of fact.
¶ 56. Therefore, I would reverse the decision of the trial judge to grant a remittitur based on his finding that it was against the overwhelming weight of the evidence and the product of bias, prejudice, or passion on the part of the jury.
COLEMAN, KING and PAYNE, JJ., JOIN THIS SEPARATE OPINION.